UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| HOLCIM (US) INC., ST. LAWRENCE | ) | |
| CEMENT COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United

States Environmental Protection Agency ("EPA"), alleges:

## NATURE OF THE ACTION

1.      This is a civil action brought against Holcim (US) Inc. ("Holcim") and St.

Lawrence Cement Company, LLC ("St. Lawrence") (collectively "Defendants") pursuant to

Sections 113(b) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7413(b) and 7477, for

injunctive relief and civil penalties for violations of (a) the Prevention of Significant

Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, and Maryland's PSD

program in the federally enforceable Maryland State Implementation Plan ("Maryland SIP"),

Code of Maryland Regulations ("COMAR"), Title 26, Subtitle 11, Chapter 06.14, entitled

"Control of PSD Sources," and (b) Title V of the Act, 42 U.S.C. §§ 7661-7661f, and Title V's

implementing federal regulations, 40 C.F.R. Part 70, and Maryland's federally enforceable Title

1

V program, COMAR 26.11.03, entitled "Permits, Approvals, and Registration - Title V Permits."

JURISDICTION AND VENUE

2.     This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

3.     Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) because the violations which constitute the basis of this Complaint occurred in this District and the portland cement plant at issue is operated by Defendants in this District.

NOTICES

4.     On June 4, 2008 and June 23, 2009, EPA issued Notices of Violation ("NOVs") to Holcim for, *inter alia*, violations of the PSD provisions of the Act and COMAR 26.11.06.14, pursuant to Section 113(a)(1) and (a)(3) of the Act, 42 U.S.C. § 7413(a)(1) and (a)(3), and provided copies of the NOVs to the State of Maryland.

5.     On June 23, 2009, EPA issued NOVs to St. Lawrence for, *inter alia*, violations of the PSD provisions of the Act and COMAR 26.11.06.14, pursuant to Section 113(a)(1) and (a)(3) of the Act, 42 U.S.C. § 7413(a)(1) and (a)(3), and provided copies of the NOVs to the State of Maryland.

6.     More than 30 days have elapsed since issuance of the NOVs referred to in the preceding Paragraphs.

7.     The United States has provided notice of the commencement of this action to the State of Maryland, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

2

DEFENDANTS

8.      Holcim is a Delaware corporation and is the owner/operator of a portland cement plant located in Hagerstown, Washington County, Maryland, which, according to its Title V permit, is located at 1260 Security Road, Hagerstown, Maryland, 21742 (hereinafter "Facility").

9.      St. Lawrence is a Delaware corporation and is the former owner and current operator of the Facility.

10.     Defendants are each a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and COMAR 26.11.01.01(B)(34).

STATUTORY AND REGULATORY BACKGROUND

11.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

A. The National Ambient Air Quality Standards

12.     Section 108(a) of the Act, 42 U.S.C. § 7408(a), requires the Administrator of EPA to identify and prepare air quality criteria for each air pollutant, emissions of which may endanger public health or welfare, and the presence of which results from numerous or diverse mobile or stationary sources. For each such "criteria" pollutant, Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to promulgate national ambient air quality standards ("NAAQS") requisite to protect the public health and welfare.

13.     Pursuant to Sections 108 and 109, 42 U.S.C. §§ 7408 and 7409, EPA has identified sulfur dioxide ("$SO_2$"), among others, as a criteria pollutant, and has promulgated NAAQS for such pollutants. 40 C.F.R. § 50.4 and 50.5; 40 C.F.R. § 50.6.

14.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to

3

designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area with respect to such pollutant. An area that does not meet the NAAQS for a particular pollutant is termed a "nonattainment" area with respect to such pollutant. An area that cannot be classified as either "attainment" or "nonattainment" with respect to a particular pollutant due to insufficient data is termed "unclassifiable" with respect to such pollutant.

15.     At all times relevant to this Complaint, Washington County, Maryland, the area in which the Facility is located, has been classified as attainment or unclassifiable for $SO_2$. 40 C.F.R. § 81.321.

B.  The Prevention of Significant Deterioration Requirements

16.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS standards. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. 42 U.S.C. § 7470. These provisions are referred to herein as the "PSD program."

17.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the requirements of Section 165 and the facility employs the best available control technology ("BACT") for each pollutant

4

subject to regulation under the Act that is emitted from the facility.

18.     Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates portland cement plants which emit or have the potential to emit 100 tons per year or more of any air pollutant to be "major emitting facilities."

19.     Sections 110(a) and 161 of the Act, 42 U.S.C. §§ 7410(a) and 7471, require each state to adopt a state implementation plan ("SIP") that contains emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as attainment or unclassifiable.

20.     A state may comply with Sections 110(a) and 161 of the Act, 42 U.S.C. §§ 7410(a) and 7471, by having its own PSD rules, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166, approved by EPA as part of its SIP.

21.     On May 28, 2002, EPA approved Maryland's PSD program rules, COMAR 26.11.06.14, into the Maryland SIP, with an effective date of July 29, 2002.  67 Fed. Reg. 36810 (May 28, 2002).

22.     Under Maryland's PSD program, a person may not construct, modify, or operate, or cause to be constructed, modified, or operated, a PSD source which will result in violation of any provision of 40 C.F.R. § 52.21, 2000 edition.

23.     Under Maryland's PSD program, a "Prevention of Significant Deterioration (PSD) source" is defined as, among other things, portland cement plants which emit or have the potential to emit 100 tons per year or more of any pollutant subject to regulation under the Act. COMAR 26.11.01.01(B)(37).

24.     The PSD regulations set forth in 40 C.F.R. § 52.21 apply to any "major stationary source" that intends to construct a "major modification" in an attainment or unclassifiable area.

5

40 C.F.R. § 52.21(i)(2).

25.     Under the PSD regulations, "major stationary source" is defined to include, *inter alia*, portland cement plants which emit or have the potential to emit 100 tons per year or more of any pollutant subject to regulation under the Act.  40 C.F.R. § 52.21(b)(1)(i)(a).

26.     Under the PSD regulations, "major modification" is defined at 40 C.F.R. § 52.21(b)(2) as any physical change or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act.

27.     Under the PSD regulations, "net emissions increase" means the amount by which the sum of the following exceeds zero: "[a]ny increase in actual emissions from a particular physical change or change in method of operation at a stationary source" and "[a]ny other increases and decreases in actual emissions at the major stationary source that are contemporaneous with the particular change and are otherwise creditable."  40 C.F.R. § 52.21(b)(3)(i).

28.     Under the PSD regulations, a "significant" net emissions increase means an increase in the rate of emissions that would equal or exceed 40 tons per year of $SO_2$.  40 C.F.R. § 52.21(b)(23)(i).

29.     The PSD regulations define "actual emissions" as the average rate, in tons per year, at which the unit "actually emitted the pollutant during a two-year period which precedes the particular date" and which is representative of normal operation.  40 C.F.R. § 52.21(b)(21)(i)-(ii).  In addition, for any emissions unit that "has not begun normal operations on the particular date, actual emissions shall equal the potential to emit" of the unit on that date.  40 C.F.R. § 52.21(b)(21)(iv).

6

30.     Under the PSD regulations, "construction" means "any physical change or change in the method of operation (including fabrication, erection, installation, demolition, or modification of an emissions unit)" that "would result in a change in actual emissions." 40 C.F.R. § 52.21(b)(8); *see also* 42 U.S.C. § 7479(2)(C) ("construction" includes the "modification" (as defined in Section 111(a) of Act, 42 U.S.C. § 7411(a)) of any source or facility).

31.     If a source is a major stationary source in an attainment or unclassifiable area planning to construct a major modification under the foregoing definitions, then it is subject to the requirements of paragraphs (j) through (r) of 40 C.F.R. § 52.21.

32.     A major stationary source subject to the requirements of paragraphs (j) through (r) must, among other things, perform an analysis of source impacts, perform air quality modeling and analysis, apply BACT, and allow for meaningful public participation in the process. 40 C.F.R. § 52.21(j)-(r).

33.     No major stationary source to which the requirements of paragraphs (j) through (r) of 40 C.F.R. § 52.21 apply shall begin actual construction of a major modification without a permit which states that the stationary source or modification will meet those requirements (a "PSD permit"). 40 C.F.R. § 52.21(i)(1).

34.     Any owner or operator of a source or modification subject to 40 C.F.R. § 52.21 who constructs or operates a source not in accordance with a PSD application or commences construction without applying for and receiving approval thereunder is subject to an enforcement action. 40 C.F.R. § 52.21(r)(1).

## C. Title V Permit Program

35.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit

7

program for certain sources, including "major sources" and any source required to have a PSD permit. Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

36.    Pursuant to Section 502(b) of the Act, 42 U.S.C. § 7661a(b), on July 21, 1992, EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a major source operating permit program to be administered by any air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

37.    In 2003, EPA granted final approval of the federally enforceable Maryland Title V program. 68 Fed. Reg. 1974 (Jan. 15, 2003). Maryland's Title V program is codified in COMAR 26.11.03.

38.    Maryland's Title V program requires that a major source shall apply for and obtain a Title V permit. COMAR 26.11.03.01(A)(1).

39.    Section 502(a) of the Act, 42 U.S.C. § 7661a(a), the federal Title V regulations, 40 C.F.R. § 70.7(b), and the Maryland Title V program, COMAR 26.11.03.01, have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

40.    Section 504 of the Act, 42 U.S.C. § 7661c, the federal Title V regulations, 40 C.F.R. §§ 70.1(b), 70.6(a), and the Maryland Title V program, COMAR 26.11.03.05, have at all relevant times required that each Title V permit include, among other things, enforceable emission limits and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP. These requirements include any PSD requirements, including the requirement to comply with an emission rate that meets

8

BACT.

41.     Section 503(b) and (c) of the Act, 42 U.S.C. § 7661b(b) and (c), and the Maryland

Title V program, COMAR 26.11.03.03, have at all relevant times provided that any person

required to have a permit must submit to the permitting authority a compliance plan describing

how the source will comply with all applicable requirements, and an application for a permit

signed by a responsible official who must certify the accuracy of the information submitted.

42.     The federal Title V regulations, 40 C.F.R. § 70.5, and the Maryland Title V

program, COMAR 26.11.03.02(C) and 26.11.03.03, have at all relevant times required any

owner or operator of a source subject to Title V permitting requirements to submit a complete

permit application which, among other things, identifies all applicable requirements (including

the PSD requirements such as the requirement to comply with an emission rate that meets

BACT), certifies compliance with all applicable requirements, and contains a compliance plan

for all applicable requirements for which the source is not in compliance.

43.     Title V permit applicants are required to submit supplementary facts or corrected

information as necessary to the permitting authority after submitting an initial application where

such application contains incorrect information and to provide additional information to address

any requirements that become applicable to the source after the date it filed a complete

application but prior to release of a draft permit.  40 C.F.R. § 70.5(b); COMAR 26.11.03.02(E).

<u>ENFORCEMENT PROVISIONS</u>

44.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that

the Administrator may bring a civil action in accordance with Section 113(b) of the Act, 42

U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the

Administrator finds that any person has violated or is in violation of any requirement or

prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or the PSD provisions of the Maryland SIP. *See also* 40 C.F.R. § 52.23.

45.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, against any person whenever such person has violated, or is in violation of, *inter alia,* the requirements or prohibitions described in the preceding paragraph.

46.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

GENERAL ALLEGATIONS

47.     At all times pertinent to this civil action, St. Lawrence was and is the operator of the Facility.

48.     From 1985 through December 31, 2007, St. Lawrence owned the Facility.

49.     From January 1, 2008 through the present, Holcim owned and continues to own and operate the Facility.

10

50.    At all relevant times, the Facility has produced cement as a result of conducting several sequential and related process activities.  These process activities have included, among other things, the quarrying of raw materials, the crushing of raw materials, the grinding and mixing of raw materials, the heating of raw materials in a kiln to produce clinker, the cooling of clinker in a clinker cooler, and the mixing of clinker with other materials at a finish grinding system to produce cement.

51.    At all times pertinent to this civil action, the Facility has emitted and continues to emit more than 100 tons per year of pollutants subject to regulation under the Act, including, but not limited to, $SO_2$.

52.    At all times pertinent to this civil action, the Facility was and is a portland cement plant and a "major emitting facility" and a "major stationary source," within the meaning of the Act.  42 U.S.C. § 7479(1); 40 C.F.R. § 52.21(b)(1).

53.    At all times pertinent to this civil action, the Facility was and is a "Prevention of Significant Deterioration (PSD) source," within the meaning of Maryland's PSD program, COMAR 26.11.01.01(B)(37).

54.    At all times pertinent to this civil action, the Facility was and is a "major source" within the meaning of Title V of the Act, the federal Title V regulations, and the Maryland Title V program.  42 U.S.C. § 7661(2); 40 C.F.R. § 70.2; COMAR 26.11.03.01(A).

FIRST CLAIM FOR RELIEF
(PSD Violations)

55.    Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56.    In 2003, St. Lawrence commenced construction of the Tire Derived Fuel Project ("TDF Project") at the Facility.

11

57.     The TDF Project involved a variety of construction activities, including, among other things, installation of a mid-kiln tire chute for the injection of whole tires as a fuel source; installation of a new induced draft fan; installation of mixing air technology; and replacement of a burner pipe.

58.     Activities undertaken as part of the TDF Project, including the installation of a mid-kiln tire chute for the injection of whole tires as a fuel source and a new induced draft fan, resulted in a significant net emissions increase of $SO_2$ within the meaning of the Act and the PSD rules of the Maryland SIP.  40 C.F.R. § 52.21(b)(3)(i) and (b)(23)(i); COMAR 26.11.06.14.

59.     Activities undertaken as part of the TDF Project, including the installation of a mid-kiln tire chute for the injection of whole tires as a fuel source and a new induced draft fan, constituted such major modification(s) within the meaning of the Act and the PSD rules of the Maryland SIP.  40 C.F.R. § 52.21(b)(2); COMAR 26.11.06.14.

60.     Defendants did not obtain a PSD permit prior to commencing construction on the TDF Project.

61.     Defendants have never obtained a PSD permit in relation to the TDF Project.

62.     Defendants violated and continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD rules in the Maryland SIP by, among other things, (i) commencing construction of the major modification(s) at the Facility and operating the Facility after the major modification(s) without obtaining a PSD permit; (ii) failing to undergo a BACT determination in connection with the major modification(s); (iii) failing to demonstrate that allowable emission increases from the modification(s) would not cause or contribute to air pollution in violation of applicable air quality standards and model; (iv) failing to model the air quality impacts of the Project; and (v) failing to provide for public review and comment on the Project.  42 U.S.C. §

12

7475(a); 40 C.F.R. § 52.21(i)-(r); COMAR 26.11.06.14.

63.     Defendants did not install or operate BACT for the control of $SO_2$ emissions resulting from the TDF Project.

64.     Defendants have never installed or operated BACT for the control of $SO_2$ emissions at the Facility.

65.     Defendants violated and continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD rules in the Maryland SIP by failing to install and operate BACT for the control of $SO_2$ emissions.  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21(j); COMAR 26.11.06.14.

66.     Unless restrained by an order of this Court, these violations of the Act will continue.

67.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendants to injunctive relief and/or a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF
(Title V Violation – Operation with a Deficient Permit)

68.     Paragraphs 1 through 67 are realleged and incorporated herein by reference.

69.     As alleged above, St. Lawrence commenced the major modification(s) at the

13

Facility as defined under the PSD regulations in the Maryland SIP. As a result, the modification(s) triggered the requirements to, among other things, obtain a PSD permit establishing emission limits that meet BACT and to operate in compliance with BACT. Defendants failed to comply with these requirements.

70.    On or about July 15, 1997, St. Lawrence, doing business as Independent Cement Corporation, submitted a Title V permit application (the "1997 Title V application") to the Maryland Department of the Environment ("MDE").

71.    The 1997 Title V application did not identify the PSD regulations as applicable requirements.

72.    The 1997 Title V application did not certify compliance with the PSD regulations or contain a compliance plan for achieving compliance with the PSD regulations.

73.    Subsequent to the 1997 Title V application, Defendants submitted several supplements to the application before the permit was issued.

74.    None of the Title V application supplements identified the PSD regulations as applicable requirements.

75.    None of the Title V application supplements certified compliance with the PSD regulations or contained a compliance plan for achieving compliance with the PSD regulations.

76.    Defendants failed to submit a complete application, or to supplement or correct their application and provide additional information to address requirements becoming applicable after the filing of its application, for a Title V operating permit for the Facility that identified all applicable requirements (including the PSD requirements and the requirement to comply with an emission rate that meets BACT), that accurately certified compliance with such requirements, and that contained a compliance plan for all applicable requirements for which the

14

source was not in compliance as required by Section 503(b) and (c) of the Act, 42 U.S.C. § 7661b(b) and (c), 40 C.F.R. § 70.5 and COMAR 26.11.03.02(C).

77.     On February 1, 2005, St. Lawrence obtained a Title V permit for the Facility.

78.     The Title V permit did not and does not contain emission limits for $SO_2$ that met the PSD BACT requirement.

79.     As a result of Defendants' failure to provide accurate and complete information in its application or to properly supplement or correct its application, Defendants failed to obtain a proper or adequate Title V operating permit and operate the Facility pursuant to a proper or adequate Title V operating permit for the Facility that contained emission limits for $SO_2$ that met BACT as required by Sections 502(a) of the Act, 42 U.S.C. §§ 7661a(a), 40 C.F.R. §§ 70.1(b), 70.6(a) and COMAR 26.11.03.05.

80.     Defendants thereafter operated the Facility without meeting such emission limits and without having an operating permit that requires compliance with such emission limits or that contains a compliance plan for all applicable requirements for which the Facility is not in compliance.

81.     Defendants' conduct violated and continues to violate Sections 502, 503, and 504 of the Act, 42 U.S.C. §§ 7661a, 7661b, and 7661c, and the federal regulations, 40 C.F.R. Part 70, and the Maryland Title V program, COMAR 26.11.03.

82.     Unless restrained by an order of this Court, these violations will continue.

83.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendants to injunctive relief and/or a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31,

1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 86 above, the United States of America requests that this Court:

1.      Permanently enjoin Defendants from operating the Facility, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2.      Order Defendants to apply for and comply with permits for the Facility that are in conformity with the requirements of the PSD programs in the Act and the Maryland SIP, and with the federal and Maryland Title V programs;

3.      Order Defendants to remedy their past violations by, among other things, requiring Defendants to install and operate BACT at the Facility for each pollutant subject to regulation under the Act;

4.      Order Defendants to take other appropriate actions to address or offset the unlawful emissions of $SO_2$ attributable to the violations of the Clean Air Act alleged above;

5.      Assess a civil penalty against Defendants of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and

16

including January 12, 2009; and up to $37,500 per day for each such violation occurring on or

after January 13, 2009;

6.     Award Plaintiff its costs of this action; and,

7.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

PETER J. PUTIGNANO
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 305-0354
Facsimile:  (202) 616-6583
E-mail:  Peter.Putignano@usdoj.gov

ROD J. ROSENSTEIN
United States Attorney for the
District of Maryland

LARRY ADAMS
Assistant United States Attorney
United States Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
Telephone:  (410) 209-4801
E-mail:  Larry.Adams@usdoj.gov

17

OF COUNSEL:

ROBERT FENTRESS
Attorney-Advisor
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

NATALIE L. KATZ
Senior Assistant Regional Counsel
Office of Regional Counsel (3RC30)
U.S. EPA, Region III
1650 Arch Street
Philadelphia, PA 60604-3590